Case 8:26-cv-00333-JLB-SPF    Document 1-1    Filed 02/04/26    Page 1 of 28 PageID 5

**IN THE COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION**

**JASON BROWNE,**

   *Plaintiff,*

v.

            Case No.: _____

**LVNV FUNDING, LLC, MRV BANKS,
SYNOVUS BANK, THE BANK OF
MISSOURI,**
*and* **VERVENT, INC.,**      **JURY TRIAL DEMANDED**

   *Defendants.*

## COMPLAINT AND DEMAND FOR JURY TRIAL

  **COMES NOW** the Plaintiff, **JASON BROWNE** ("**Mr. Browne**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **LVNV FUNDING, LLC** ("**LVNV**"), **MRV BANKS** ("**MRV**"), **SYNOVUS BANK**, ("**Synovus**"), **THE BANK OF MISSOURI** ("**TBOM**"), and **VERVENT, INC.** ("**Vervent**"), (collectively, the "**Defendants**") stating as follows:

## PRELIMINARY STATEMENT

  1.  This is an action for damages exceeding $8,000 but less than $15,000, exclusive of fees and costs, brought by Mr. Browne **against all Defendants** for violations of Florida's **Civil Remedies for Criminal Practices Act,** § 772.101, Fla. Stat., *et seq.* ("**CRCPA**"), **against LVNV and Vervent only** for violations of the **Florida Consumer Collection Practices Act**, § 559.55, Fla. Stat., *et seq.* ("**FCCPA**"), and **against LVNV only** for violations of the **Fair Debt Collection Practices Act,** 15 U.S.C. § 1692, *et seq.* ("**FDCPA**").

## JURISDICTION AND VENUE

2.    Jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the CRCPA, § 772.104, Fla. Stat., the FCCPA, § 559.77, Fla. Stat., and § 34.01, Fla. Stat.

3.    The Defendants are subject to the provisions of the FDCPA, FCCPA and CRCPA, and is subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat.

4.    Venue is proper in Hillsborough County, Florida, because the acts complained of were committed and/or caused by the Defendant therein.

## PARTIES

### Mr. Browne

5.    **Mr. Browne** is a natural person residing in the City of Tampa, Hillsborough County, Florida.

6.    Mr. Browne is *Consumer* as defined by the FDCPA, 15 U.S.C. § 1692a(3), and the FCCPA, § 559.55(8), Fla. Stat.

### LVNV

7.    **LVNV** is a Delaware limited liability company with a principal business address of 6801 S. Cimarron Rd., Suite 424-J, Las Vegas, NV 89113.

8.    LVNV is registered to conduct business in the State of Florida, where its Registered Agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**.

9.    LVNV is registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency* ("CCA"), holding license number CCA9902540**.**

10.    As a licensed CCA, LVNV knows, or should know, the requirements of the FDCPA and the FCCPA.

Page **2** of **28**

11.     LVNV is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. §1692a(6), and the FCCPA, § 559.55(7), Fla. Stat., in that it uses an instrumentality of interstate commerce, including postal mail and the internet, for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

### Vervent

12.     **Vervent** is a Delaware corporation with a principal business address of 10182 Telesis Court, Suite 300, San Diego, CA 92121.

13.     Vervent is registered to conduct business in the State of Florida, where its Registered Agent is **CT Corporation System, 1200 South Pine Road, Plantation, FL 33324**.

### Synovus

14.     **Synovus** is a Georgia corporation with a principal business address of 1111 Bay Avenue, Columbus, GA 31901.

15.     Synovus is registered to conduct business in the State of Florida, where its Registered Agent is **Corporation Service Company, 1201 Hay Street, Tallahassee, FL 32301**.

### MRV

16.     **MRV** is a Missouri corporation with a principal business address of 871 Sainte Genevieve Dr., Saint Genevieve, MO 63670.

17.     MRV's Missouri Registered Agent is **Robert G. Lawrence, 871 Saint Genevieve Dr., Saint Genevieve, MO 63670**.

### TBOM

18.     **TBOM** is an FDIC-insured bank whose principal business address is 906 North Kings Highway, Perryville, MO 63775.

19.     TBOM's Missouri registered agent is **916 North Kings Highway, Perryville, MO 63775**.

## FACTUAL ALLEGATIONS

20.     Sometime around March 2025, Mr. Browne allegedly obtained a line of credit (the "Total Account") from Vervent, marketed as a Total Visa Card®.

21.     The Total Account had a credit limit of $300 with, upon information and belief, a stated annual percentage rate ("APR") of at least 34.99%

22.     The Total Account also charged a $75 annual fee, due immediately upon issuance of the line of credit to Mr. Browne, reducing his available line of credit to $225.

23.     In order for Mr. Browne to open the Total Account, he was required to pay a "program fee" of at least $95.

24.     Vervent required the program fee to be paid prior to opening the account.

25.     The Total Account was purportedly funded through TBOM.

26.     Around March 2025, Mr. Browne obtained a line of credit (the "Revvi Account") from Vervent, marketed as a Revvi Card®.

27.     The Revvi Account had a stated credit limit of $300 with, upon information and belief, a stated APR of at least 34.99%.

28.     The Revvi Account charged a $75 annual fee, due immediately upon issuance of the line of credit to Mr. Browne, reducing his available lone of credit to $225.

29.     In order for Mr. Browne to open the Revvi Account, he was required to pay a "program fee" of at least $95.

30.     Vervent likewise required the program fee to be paid prior to opening the account.

31.     The Revvi Account was purportedly funded through MRV.

32.    Around April 2023, Mr. Browne obtained an open-ended line of credit (the "First Digital Account") from Vervent, marketed as a First Digital Mastercard®

33.    The First Digital Account has a stated credit limit of $300 with, upon information and belief, a stated APR of at least 34.99%.

34.    The First Digital Account charged a $75 annual fee, due immediately upon issuance of the line of credit to Mr. Browne, reducing his available credit to $225.

35.    In order for Mr. Browne to open the First Digital Mastercard, he was required to pay a "program fee" of at least $95.

36.    Vervent likewise required the program fee to be paid prior to opening the account.

37.    The First Digital account was purportedly funded through Synovus.

38.    In 2021, Mr. Browne obtained an open-ended line of credit (the "First Access Account") from Vervent, marketed as a First Access Card.

39.    The First Access Account has a stated credit limit of $300 with, upon information and belief, a stated APR of at least 35.99%.

40.    The First Access Account charged a $75 annual fee, due immediately upon issuance of the line of credit to Mr. Browne, reducing his available credit to $225.

41.    In order for Mr. Browne to open the First Access Mastercard, he was required to pay a "program fee" of at least $95.

42.    Vervent likewise required the program fee to be paid prior to opening the account.

43.    The First Access account was purportedly funded through TBOM.

44.    Each the Total Account, the Revvi Account, the First Digital Account and the First Access Account (collectively, the "Accounts") were used to purchase goods which were used for family, personal, or household purposes, *specifically* charges for consumer goods, the Accounts

Page **5** of **28**

meet the definitions of *Debt* under the FDCPA, 15 U.S.C. §1692a(5), and the FCCPA, § 559.55(6), Fla. Stat.

45.    § 687.071(2), Fla. Stat. renders extensions of credit made at interest rates between 25 to 45 percent per year a second-degree misdemeanor.

46.    The interest rate of each of the Accounts exceeded 25%.

47.    § 687.071(7), Fla. Stat. indicates that any such extension of credit, and logically any debt stemming from such extension of credit, is void and unenforceable. *See also Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935) (criminally usurious loans are "void as against the public policy of the state as established by its Legislature.")

48.    Indeed, even the recovery of the principal balance made at usurious rates is impermissible under Florida law. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

49.    Because the Accounts were subject to an interest rate greater than 25%, the balances of the Accounts are void *ab initio* and unenforceable under Florida law. *See Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966). *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935) (criminally usurious loans are "void as against the public policy of the state as established by its Legislature.")

50.    The balances on the Accounts are therefore each an *unlawful debt* per § 772.102(2)(a)(3), Fla. Stat.

51.    Any amount repaid on a usurious debt deemed void *ab initio* by state law constitutes unjust enrichment, even if less than the original amount of the loan. *See, e.g., Williams et al. vs. Big Picture Loans, LLC*, case 3:17-cv-461, E.D. Virginia, July 20, 2021.

## Vervent Engages in Rent-a-Bank Scheme with MRV, TBOM, & Synovus

52.     The Total Visa Card is a registered trademark of Total Card, Inc. ("**Total**").

53.     In December 2020, Total was sold to the California-based FinTech company Vervent, Inc.

54.     The Revvi Credit Card is a registered trademark of Vervent.

55.     The First Digital Mastercard® is a registered trademark of Vervent.

56.     The First Access Card is a registered trademark of Vervent.

57.     Total Accounts and First Access Accounts are issued by Total, and later Vervent, are ostensibly issued by TBOM, which is a small bank in Missouri whose consumer loan portfolio consists exclusively of credit products made via non-bank "partners."

58.     Revvi Accounts issued by Vervent, are ostensibly issued by MRV, which is a small bank in Missouri whose consumer loan portfolio consists exclusively of credit products made via non-bank "partners."

59.     First Digital Accounts issued by Vervent, are ostensibly issued by Synovus, which is a bank in Georgia, whose consumer loan portfolio consists exclusively of credit products made via non-bank "partners."

60.     As state-chartered banks, TBOM, MRV, and Synovus (collectively, the "**Banks**") are not subject to foreign state interest rate limits pursuant to the National Bank Act.

61.     However, the Banks are not the true lenders of cards issued by Vervent.

62.     Prior to its purchase by Vervent, Total performed all substantial business functions involving Total Visa and First Access from its offices in Sioux City, South Dakota, and other locations.

63.     After the December 2020 sale, Vervent began performing all substantial business functions in the same fashion.

Page **7** of **28**

64. Vervent's loans and cardholder agreements claim its loans are made by TBOM, MRV, and/or Synovus and are serviced by Vervent.

65. However, as aforementioned, the Banks have virtually nothing to do with loans they purportedly make utilizing Vervent's trademarked names, other than to lend their names and status as state-chartered banks to Vervent, a non-bank entity.

66. These types of "partnership," such as the one between Vervent and the Banks, are referred to as "rent-a-bank" schemes.

67. While the Banks make secured loans or extensions of credit directly to consumers themselves, the Banks offer no credit card products or other unsecured consumer loans directly.

68. Indeed, the vast majority of the Banks' consumer lending is through "partnership" agreements with non-bank lenders, similar to its agreement with Total, and now Vervent.

69. Vervent thus attempts to launder its loans through the Banks, claiming that the Banks are the lenders.

70. However, because of the structure of the rent-a-bank arrangements between Vervent and the Banks, Vervent's capital is at risk, but the Banks risk none of their capital when a consumer defaults on their loan and receives little benefit when a loan is fully repaid.

71. An examination of corporate records from the South Dakota Secretary of State shows Total, and now Vervent, owned several related companies, named Total Card Funding I LLC, Total Card Funding II LLC, and Total Card Funding III, LLC.

72. Upon information and belief, these entities, as their names clearly imply, provided capital utilized to make loans funded through Total Visa, and received payments, including usurious interest, therefrom.

73.     The Banks only collected a small, but guaranteed, fee for each loan or extension of credit originated as part of the rent-a-bank scheme with Total, and now Vervent, along with the payment of certain other fees which constitute the "rent."

74.     Vervent's partnership with the Banks required it to purchase loans or extensions of credit like the ones made to Mr. Browne almost immediately after origination – usually the same day.

75.     Through a highly complex series of transactions involving multiple entities, including Total Card Funding I, LLC and Total Card Funding II, LLC, TBOM assigns ownership of the credit card receivables to Vervent.

76.     Vervent then collects the receivables from the extensions of credit, which includes the triple-digit interest, along with additional situational fees.

77.     As part of their scheme, Vervent is required to ensure the Banks "can't lose" money on Total, Revvi, First Access and/or First Digital customers and maintains a cash collateral account with the Banks, an alternative collateral account, and letters of credit which benefit the Banks.

78.     Consumers seeking to obtain a Total Visa were required to apply at www.totalcardvisa.com, a website owned and maintained by Vervent, and not through TBOM's own website.

79.     Consumers seeking to obtain a Revvi Card were required to apply at www.revvi.com, a website owned and maintained by Vervent, and not through MRV's own website.

80.     Consumers seeking to obtain a First Digital Mastercard® were required to apply at www.firstdigitalcard.com, a website owned and maintained by Vervent, and not through Synovus' own website.

81.    Consumers seeking to obtain a First Access Card were required to apply at www.firstaccesscard.com, a website owned and maintained by Vervent, and not through TBOM's own website.

82.    Potential borrowers are screened based upon lending criteria developed and implemented by Vervent, not by the Banks.

83.    Vervent, through a subsidiary, acted as the servicer for Mr. Browne's Accounts.

84.    Vervent, and not the Banks, reconciled the Accounts, posts payments and other credits to the Accounts, and provided periodic billing statements to Mr. Browne.

85.    Vervent, and not the Banks, mailed periodic statements and emailed Mr. Browne, using its address as the correspondence address.

86.    Vervent reported Mr. Browne's Accounts to several major *Consumer Credit Reporting Agencies* ("**CRAs**"), including Experian Information Solutions, Inc. ("**Experian**"). *See* **PLAINTIFF'S EXHIBIT A**.

87.    The account name for Mr. Browne's Total Account was reported to Experian as, "TOTAL VISA/TBOM/VT"; however, the address provided is the principal address for Total.

88.    The account name for Mr. Browne's Revvi Account was reported to Experian as, "REVVI/MRV BANKS/VT"; however, the address provided is the mailing address for Revvi.

89.    The account name for Mr. Browne's First Digital Account was reported to Experian as, "FIRST DIGITAL FDC SYNOVUS BANK"; however, the address provided is the mailing address for First Digital.

90.    The account name for Mr. Browne's First Access Account was reported to Experian as, "1ST ACCESS/TBOM/VT"; however, the address provided was the mailing address for First Access.

91.    Vervent, not the Banks, sold portfolios of charged-off consumer debt to third-party debt purchasers, and retained the funds for these purchases itself, and received payment for the sale of those charged-off receivables.

92.    Thus, the Banks were not the true lenders of Mr. Browne's Accounts.

93.    As the entity with the predominant economic interests in the extensions of credit it provides to consumers like Mr. Browne, Vervent is the true lender of such accounts. *See Fulford v. Marlette Funding, LLC,* No. 17CV30376 and *Fulford v. Avant of Colorado, LLC*, No. 17CV30377 (Colo. Dist. Ct. Denver County Aug. 13, 2018); see also, e.g., *State Bank v. Strong*, 651 F.3d 1241 (11th Cir. 2011); Easter v. Am. W. Fin., 381 F.3d 948, 957 (9th Cir. 2004); *CFPB v. CashCall, Inc.,* No. CV 15-7522-JFW (RAOx), 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016); *Penn v. Think Fin., Inc.*, No. 14-cv-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016); *Goleta Nat'l Bank v. Lingerfelt*, 211 F. Supp. 2d 711 (E.D. N.C. 2002); *CashCall, Inc. v. Morrisey*, No. 12-1274, 2014 WL 2404300 (W. Va. May 30, 2014) (memorandum decision); *Ubaldi v. SLM Corp.*, 852 F. Supp. 2d 1190 (N.D. Cal. 2012); and *Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537 (N.D. Ill. Mar. 30, 2017).

## <u>LVNV's Attempts to Collect Unlawful Debt From Mr. Browne</u>

94.     On or around April 2023, LVNV bought or was otherwise assigned by Vervent the First Digital Account.

95.     On or around December 2021, LVNV bought or was otherwise assigned by Vervent the First Access Account.

96.     On or around August 2025, LVNV bought or was otherwise assigned by Vervent the Total Account.

97.     On or around December 2023, LVNV bought or was otherwise assigned by Vervent the Revvi Account.

98.     LVNV began reporting the Debt to several nationwide **_Consumer Credit Reporting Agencies_** ("**CRAs**") as a collection account, including Experian, and has reported tradeline data to Experian. **SEE PLAINTIFF'S EXHIBIT B.**

99.     LVNV alleged in its reports that the Debt was a legitimate, enforceable debt, although it was not.

100.     Reporting a debt to a CRA is an attempt to collect the debt alleged therein. _See, e.g., Edeh v. Midland Credit Management, Inc.,_ 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The Court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.")

101.     LVNV has also mailed collection letters to Mr. Browne, attempting to collect the Debt from him.

102.     Mr. Browne has repaid portions of the unlawful Accounts with Vervent, including interest and fees.

103.     Mr. Browne has suffered severe emotional distress as a result of the Respondent's attempts to collect unlawful debts.

104.     The Accounts each carried effective annual interest rates in excess of Florida's maximum permitted rate, and thus the line of credit constitutes an *Unlawful Debt* under § 772.102(2), Fla. Stat.

105.     Vervent, TBOM, Synovus, MRV and other unnamed entities, through their joint operations of the Total Visa® Card, the First Access Card, First Digital Card and Revvi Card constitute an *Enterprise* under the CRCPA § 772.102(3), Fla. Stat.

106.     Mr. Browne has suffered severe emotional distress as a result of the Respondent's attempt to collect unenforceable debts.

107.     Ms. Bageard has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

### COUNT I
### LVNV'S VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e

108.     Mr. Browne adopts and incorporates paragraphs 1 – 107 as if fully stated herein.

109.     LVNV violated **15 U.S.C. § 1692e** when it used misleading and deceptive means to attempt to collect a debt by attempting to collect the Accounts from Mr. Browne, a Florida resident, both in writing and via credit reporting, claiming the Accounts from an unlicensed, non-bank entity, Vervent, each bearing annual interest exceeding 25%, were legal, valid, and enforceable debts, when the Accounts were null, void, and unenforceable under Florida law.

110.     LVNV's conduct renders it liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Mr. Browne respectfully requests that this Honorable Court enter judgment against LVNV for:

a.     Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

Page **13** of **28**

b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief this Court deems just and proper under the circumstances.

## COUNT II
## LVNV'S VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(10)

111.    Mr. Browne adopts and incorporates paragraphs 1 – 107 as if fully stated herein.

112.    LVNV violated **15 U.S.C. § 1692e(10)** when it used misleading and deceptive means to attempt to collect a debt by attempting to collect the Accounts from Mr. Browne, a Florida resident, both in writing and via credit reporting, claiming the Accounts from an unlicensed, non-bank entity, Vervent, each bearing annual interest exceeding 25%, were legal, valid, and enforceable debts, when the Accounts were null, void, and unenforceable under Florida law.

113.    LVNV's conduct renders it liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Mr. Browne respectfully requests that this Honorable Court enter judgment against LVNV for:

a.    Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief this Court deems just and proper under the circumstances.

## COUNT III
## LVNV'S VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(2)(a)

114.    Mr. Browne adopts and incorporates paragraphs 1 – 107 as if fully stated herein.

115.    LVNV violated **15 U.S.C. § 1692e(2)(a)** when it made a false representation about the character, amount and/or legal status of a debt by attempting to collect from Mr. Browne, a

Page **14** of **28**

Florida resident, both in writing and via credit reporting, Accounts from an unlicensed, non-bank entity, Vervent, each bearing annual interest exceeding 25%, were legal, valid, and enforceable debts, when the Accounts were null, void, and unenforceable under Florida law.

116.    LVNV's conduct renders it liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Mr. Browne respectfully requests that this Honorable Court enter judgment against LVNV for:

a.    Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief this Court deems equitable and proper under the circumstances.

**COUNT IV**
**LVNV'S VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(8)**

117.    Mr. Browne adopts and incorporates paragraphs 1 – 107 as if fully stated herein.

118.    LVNV violated **15 U.S.C. § 1692e(8)** when it communicated credit information which was false, and which LVNV knew, or should have known was false, to wit, that the Accounts from an unlicensed, non-bank entity, Vervent, each bearing annual interest exceeding 25%, were legal, valid, and enforceable debts, and that Mr. Browne thus actually owed the balances on the Accounts, when he did not owe them as they were null, void and unenforceable against him pursuant to Florida law.

119.    LVNV's conduct renders it liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Mr. Browne respectfully requests that this Honorable Court enter judgment against LVNV for:

a.    Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.      Such other relief this Court deems equitable and proper under the circumstances.

### COUNT V
### LVNV'S VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692f(1)

120.   Mr. Browne adopts and incorporates paragraphs 1 – 107 as if fully stated herein.

121.   LVNV violated **15 U.S.C. § 1692f(1)** when it attempted to collect amounts not authorized by contract or law – to wit, each of the purported Accounts – from Mr. Browne through written demands and credit reporting, when the Accounts were null, void, and unenforceable under Florida law.

122.   LVNV's conduct renders it liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Mr. Browne respectfully requests that this Honorable Court enter judgment against LVNV for:

a.      Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.      Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.      Such other relief this Court deems equitable and proper under the circumstances.

### COUNT VI
### VERVENT, MRV, & LVNV'S JOINT & SEVERAL VIOLATIONS OF THE
### CRCPA, § 772.103(3), FLA. STAT.

106.   Mr. Browne adopts and incorporates paragraphs 1 – 107 as if fully stated herein.

107.   The Defendants associated with the enterprise and participated in the affairs of the enterprise, which existed for the purpose of collection of unlawful debts.

108.   Vervent, MRV, and LVNV violated **§ 772.103(3), Fla. Stat.**, by participating in the enterprise and causing Plaintiff to repay amounts on the unlawful extensions of credit received by Vervent.

Page **16** of **28**

109.    Vervent's knowledge of the illegality of their extension of credit to Mr. Browne is evident from its choice to conduct business under a "rent-a-bank" scheme in Florida.

**WHEREFORE,** Mr. Browne respectfully requests this Honorable Court enter judgment against the Defendants, ordering:

a.    Threefold the amount of actual damages, or in the alternate, the statutory minimum of **$200**, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b.    Reasonable costs and attorneys' fees pursuant to § 772.104(1), Fla. Stat.; and,

c.    Any other relief this Court deems equitable and proper under the circumstances.

### COUNT VII
### VERVENT, MRV, & LVNV'S JOINT & SEVERAL VIOLATIONS OF THE CRCPA, § 772.103(4), FLA. STAT.

110.    Mr. Browne adopts and incorporates paragraphs 1 – 107 as if fully stated herein.

111.    Vervent, MRV, and LVNV violated **§ 772.103(4), Fla. Stat.**, when they conspired with each other, and other unnamed entities to issue and collect unlawful debts through the Revvi Card.

112.    Vervent was aware of the goals of the enterprise and took actions in furtherance of the conspiracy, by issuing the Revvi Account to Mr. Browne;

113.    Vervent and LVNV were aware of the goals of the enterprise and took actions in furtherance of the conspiracy, by collecting the Revvi Account from Mr. Browne

114.    Vervent and LVNV were aware of the goals of the enterprise and took actions in furtherance of the conspiracy, by reporting the Revvi Account to his credit file.

115.    Vervent, by their continued operation of the rent-a-bank scheme with MRV, evidences their agreement to participate in the conspiracy and to the overall objective of the conspiracy – to collect unlawful debt through Revvi.

Page **17** of **28**

116.    Vervent's knowledge of the illegality of their extension of credit to Mr. Browne is evident from its choice to conduct business under a "rent-a-bank" scheme in Florida.

**WHEREFORE,** Mr. Browne respectfully requests this Honorable Court enter judgment against Vervent, MRV, and LVNV, jointly and severally, ordering:

a.    Threefold the amount of actual damages, or in the alternate, the statutory minimum of **$200**, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b.    Reasonable costs and attorneys' fees pursuant to § 772.104(1), Fla. Stat.; and,

c.    Any other relief this Court deems equitable and proper under the circumstances.

**COUNT VIII**
**VERVENT, SYNOVUS, & LVNV'S JOINT & SEVERAL VIOLATIONS OF THE**
**CRCPA, § 772.103(3), FLA. STAT.**

117.    Mr. Browne adopts and incorporates paragraphs 1 – 107 as if fully stated herein.

118.    Vervent, Synovus, and LVNV associated with the enterprise and participated in the affairs of the enterprise, which existed for the purpose of collection of unlawful debts.

119.    Vervent, Synovus, and LVNV violated **§ 772.103(3), Fla. Stat.**, by participating in the enterprise and causing Plaintiff to repay amounts on the unlawful extensions of credit received by Vervent.

120.    Vervent's knowledge of the illegality of their extension of credit to Mr. Browne is evident from its choice to conduct business under a "rent-a-bank" scheme in Florida.

**WHEREFORE,** Mr. Browne respectfully requests this Honorable Court enter judgment against Vervent, Synovus, and LVNV, ordering:

a.    Threefold the amount of actual damages, or in the alternate, the statutory minimum of **$200**, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b.    Reasonable costs and attorneys' fees pursuant to § 772.104(1), Fla. Stat.; and,

c.     Any other relief this Court deems equitable and proper under the circumstances.

**COUNT IX**
**VERVENT, SYNOVUS, & LVNV'S JOINT & SEVERAL VIOLATIONS OF THE**
**CRCPA, § 772.103(4), FLA. STAT.**

121.     Mr. Browne adopts and incorporates paragraphs 1 – 107 as if fully stated herein.

122.     Vervent, Synovus, and LVNV violated **§ 772.103(4), Fla. Stat.**, when they conspired with each other, and other unnamed entities to issue and collect unlawful debts through the First Digital Card.

123.     Vervent was aware of the goals of the enterprise and took actions in furtherance of the conspiracy, by issuing the First Digital Account to Mr. Browne;

124.     Vervent and LVNV were aware of the goals of the enterprise and took actions in furtherance of the conspiracy, by collecting the First Digital Account from Mr. Browne.

125.     Vervent and LVNV were aware of the goals of the enterprise and took actions in furtherance of the conspiracy, by reporting the First Digital Account to his credit file.

126.     Vervent, by their continued operation of the rent-a-bank scheme with Synovus, evidences their agreement to participate in the conspiracy and to the overall objective of the conspiracy – to collect unlawful debt through First Digital.

127.     Vervent's knowledge of the illegality of their extension of credit to Mr. Browne is evident from its choice to conduct business under a "rent-a-bank" scheme in Florida.

**WHEREFORE,** Mr. Browne respectfully requests this Honorable Court enter judgment against Vervent, Synovus, and LVNV, jointly and severally, ordering:

a.     Threefold the amount of actual damages, or in the alternate, the statutory minimum of **$200**, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b.     Reasonable costs and attorneys' fees pursuant to § 772.104(1), Fla. Stat.; and,

c.      Any other relief this Court deems equitable and proper under the circumstances.

**COUNT X**
**VERVENT, TBOM, & LVNV'S JOINT & SEVERAL VIOLATIONS OF THE**
**CRCPA, § 772.103(3), FLA. STAT.**

128.    Mr. Browne adopts and incorporates paragraphs 1 – 107 as if fully stated herein.

129.    Vervent, TBOM, and LVNV associated with the enterprise and participated in the affairs of the enterprise, which existed for the purpose of collection of unlawful debts.

130.    Vervent, TBOM, and LVNV violated **§ 772.103(3), Fla. Stat.**, by participating in the enterprise and causing Plaintiff to repay amounts on the unlawful extensions of credit received by Vervent.

131.    Vervent's knowledge of the illegality of their extension of credit to Mr. Browne is evident from its choice to conduct business under a "rent-a-bank" scheme in Florida.

**WHEREFORE,** Mr. Browne respectfully requests this Honorable Court enter judgment against Vervent, TBOM, and LVNV, ordering:

a.      Threefold the amount of actual damages, or in the alternate, the statutory minimum of **$200**, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b.      Reasonable costs and attorneys' fees pursuant to § 772.104(1), Fla. Stat.; and,

c.      Any other relief this Court deems equitable and proper under the circumstances.

**COUNT XI**
**VERVENT, TBOM, & LVNV'S JOINT & SEVERAL VIOLATIONS OF THE**
**CRCPA, § 772.103(4), FLA. STAT.**

132.    Mr. Browne adopts and incorporates paragraphs 1 – 107 as if fully stated herein.

133.    Vervent, TBOM, and LVNV violated **§ 772.103(4), Fla. Stat.**, when they conspired with each other, and other unnamed entities to issue and collect unlawful debts through the Total Visa Card and the First Access Card programs.

Page **20** of **28**

134.    Vervent was aware of the goals of the enterprise and took actions in furtherance of the conspiracy, by issuing the First Access Account and the Total Account to Mr. Browne;

135.    Vervent and LVNV were aware of the goals of the enterprise and took actions in furtherance of the conspiracy, by collecting on the accounts from Mr. Browne.

136.    Vervent and LVNV were aware of the goals of the enterprise and took actions in furtherance of the conspiracy, by reporting these accounts to his credit file.

137.    Vervent, by their continued operation of the rent-a-bank scheme with TBOM, evidences their agreement to participate in the conspiracy and to the overall objective of the conspiracy – to collect unlawful debt through First Access Card and Total Visa Card.

138.    Vervent's knowledge of the illegality of their extension of credit to Mr. Browne is evident from its choice to conduct business under a "rent-a-bank" scheme in Florida.

**WHEREFORE,** Mr. Browne respectfully requests this Honorable Court enter judgment against Vervent, TBOM, and LVNV, jointly and severally, ordering:

a.    Threefold the amount of actual damages, or in the alternate, the statutory minimum of **$200**, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b.    Reasonable costs and attorneys' fees pursuant to § 772.104(1), Fla. Stat.; and,

c.    Any other relief this Court deems equitable and proper under the circumstances.

### COUNT XII
### VERVENT'S VIOLATIONS OF THE FCCPA, § 559.72(9), FLA. STAT.

139.    Mr. Browne adopts and incorporates paragraphs 1 – 107 as if fully stated herein.

140.    The Defendants violated **§ 559.72(9), Fla. Stat.**, when they asserted the existence of a legal right which does not exist, specifically the right to collect Mr. Browne's Accounts, when they collected and attempted to collect the Accounts, when no such legal right existed as the

Accounts were illegitimate and unenforceable due to the application of interest rates in excess of 25% per annum, in violation of § 687.071, Fla. Stat.

141.   The Defendants violated **§ 559.72(9), Fla. Stat.**, when they asserted rights which do not exist, specifically, the right to collect proceeds from Mr. Browne, when the debts were not legally owed as they were void *ab initio* pursuant to Florida law.

142.   The Defendants are in possession of the documents related to Mr. Browne's Accounts and thus knew, or should have known, that the Accounts each contained an illegal interest rate under Florida law.

143.   The Defendants' knowledge is evinced by their business model, whereby Vervent "launders" loans through TBOM, MRV, and/or Synovus to provide a guise of legitimacy.

144.   The Defendants' actions were willful, intentional, and done for the express purpose of collecting unenforceable debts from Mr. Browne and profiting from them.

145.   The Defendants knew of the illegal nature of its accounts, as evidenced by their business model, whereby it launders its loans through TBOM, MRV, and/or Synovus in an effort to avoid state usury laws.

**WHEREFORE,** Mr. Browne respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, for:

a.   Statutory damages of **$1,000** pursuant to § 559.77(2), Fla. Stat.;

b.   Actual damages pursuant to § 559.77(2), Fla. Stat.;

c.   **Injunctive relief** preventing the Defendants from attempting to collect the alleged balances on the Accounts from Mr. Browne pursuant to § 559.77(2), Fla. Stat.;

d.   Reasonable costs and attorney's fees pursuant to § 559.77(2) Fla. Stat.; and,

e.   Such other relief that this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Mr. Browne hereby demands a trial by jury on all issues so triable.

Respectfully submitted on **November 20, 2025**, by:

**SERAPH LEGAL, P. A.**

<u>/s/ *Fethullah Gulen*</u>
Fethullah Gulen, Esq.
Florida Bar Number: 1045392
FGulen@seraphlegal.com
2124 W Kennedy Blvd, Suite A
Tampa, FL 33606
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

## <u>ATTACHED EXHIBIT LIST</u>

    A.  Mr. Browne's Experian Consumer Disclosure, September 28, 2025, The Accounts Tradelines – Excerpts
    B.  Mr. Browne's Experian Consumer Disclosure, September 28, 2025, LVNV Tradelines – Excerpt

**EXHIBIT A**
**Mr. Browne's Experian Consumer Disclosure, September 28, 2025**
**The Accounts Tradelines - Excerpts**



11/20/2025 5:36 PM Electronically Filed: Hillsborough County/13th Judicial Circuit Page 24

# EXHIBIT A
## Mr. Browne's Experian Consumer Disclosure, September 28, 2025
## The Accounts Tradelines - Excerpts



# EXHIBIT B
## Mr. Browne's Experian Consumer Disclosure, September 28, 2025
## LVNV Tradelines - Excerpts



out:blank                                                                                          10/52

---

2/8/25, 11:52 AM                                        Experian - Access your credit report

Collection as of Sep 2025 to Sep 2023

**Balance history**

The following data will appear in the following format:
Date: account balance / date payment received / scheduled payment amount / actual amount paid
Aug 2025: $502 / No data / $0 / $0
Jul 2025: $502 / No data / $0 / $0
Jun 2025: $502 / No data / $0 / $0
May 2025: $502 / No data / $0 / $0
Apr 2025: $502 / No data / $0 / $0
Mar 2025: $502 / No data / $0 / $0
Feb 2025: $502 / No data / $0 / $0
Jan 2025: $502 / No data / $0 / $0
Dec 2024: $502 / No data / $0 / $0
Nov 2024: $502 / No data / $0 / $0
Oct 2024: $502 / No data / $0 / $0
Sep 2024: $502 / No data / $0 / $0
Aug 2024: $502 / No data / $0 / $0
Jul 2024: $502 / No data / $0 / $0
Jun 2024: $502 / No data / $0 / $0
May 2024: $502 / No data / $0 / $0
Mar 2024: $502 / No data / $0 / $0
Feb 2024: $502 / No data / $0 / $0
Jan 2024: $502 / No data / $0 / $0
Dec 2023: $502 / No data / $0 / $0
Nov 2023: $502 / No data / $0 / $0
Oct 2023: $502 / No data / $0 / $0
Sep 2023: $502 / No data / $0 / $0
The original amount of this account was $502

# EXHIBIT B
## Mr. Browne's Experian Consumer Disclosure, September 28, 2025
## LVNV Tradelines - Excerpts



11/20/2025 5:36 PM Electronically Filed: Hillsborough County/13th Judicial Circuit Page 27

# EXHIBIT B
## Mr. Browne's Experian Consumer Disclosure, September 28, 2025
## LVNV Tradelines - Excerpts



about:blank                                                                                          8/52

9/28/25, 11:52 AM                        Experian - Access your credit report

Collection as of Sep 2025 to Mar 2024

Balance history

The following data will appear in the following format:
Date: account balance / date payment received / scheduled payment amount / actual amount paid
Aug 2025: $538 / No data / $0 / $0
Jul 2025: $538 / No data / $0 / $0
Jun 2025: $538 / No data / $0 / $0
May 2025: $538 / No data / $0 / $0
Apr 2025: $538 / No data / $0 / $0
Mar 2025: $538 / No data / $0 / $0
Feb 2025: $538 / No data / $0 / $0
Jan 2025: $538 / No data / $0 / $0
Nov 2024: $538 / No data / $0 / $0
Oct 2024: $538 / No data / $0 / $0
Sep 2024: $538 / No data / $0 / $0
Aug 2024: $538 / No data / $0 / $0
Jul 2024: $538 / No data / $0 / $0
Jun 2024: $538 / No data / $0 / $0
May 2024: $538 / No data / $0 / $0
Mar 2024: $538 / No data / $0 / $0
Feb 2024: $538 / No data / $0 / $0
The original amount of this account was $538